IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| THE LASALLE GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-03517-CV-S-DGK |
| | ) | |
| VETERANS ENTERPRISE TECHNOLOGY | ) | |
| SERVICES, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO INTERVENE

This case arises from a construction project for the United States, through the United States Army Corps of Engineers ("USACE"), under which the USACE engaged Defendant Veterans Enterprise Technology Services LLC ("VETS") as the primary contract to perform the construction of a dining hall at Fort Leonard Wood, Missouri. At issue is a fund of money derived from the settlement of certain construction contract claims originating with USACE in which the Plaintiff, the LaSalle Group, Inc. ("LaSalle"), and the Defendant, VETS, each claim to have an interest.

Currently pending before the Court are a "Motion to Intervene" on behalf of Central Electric of Sullivan, Inc. ("Central") and Westward Construction, Inc. ("Westward") (Doc. 12), Plaintiff's "Response to Motion to Intervene" (Doc. 21), and Defendant's "Suggestions in Opposition to Motion to Intervene" (Doc. 23). Because the Court finds that Central and Westward, hereinafter referred to collectively as "Movants," cannot intervene as of right, and because the Court declines to grant Movants permissive intervention, the motion to intervene is denied.

**Background**

In the instant case, LaSalle seeks a preliminary injunction against VETS for money owed pursuant to a construction contract between the two. The facts relevant to whether Movants should

be allowed to intervene in the present case are summarized as follows.

On July 30, 2008, the USACE awarded VETS a contract for construction of a Double Dining Facility ("the Project") at Fort Leonard Wood, in the original contract amount of $19,100,000. On or about August 25, 2008, VETS and LaSalle entered into a subcontract for $15,566,000 ("the Subcontract") under which LaSalle was to perform substantially all the project work and to engage trade subcontractors, materials and equipment suppliers, and laborers as necessary to complete work on the Project. On or about March 18, 2009, LaSalle entered into a subcontract with Central to perform electrical work on the Project for $648,000 ("the Sub-subcontract"). Central subsequently engaged Westward as a limited joint venture to assist in providing the bonding to secure performance and payment for labor, materials, and equipment used. Central now claims that LaSalle has failed and continues to refuse to pay Central for much of Central's work on the project. Central claims LaSalle presently owes Central at least $482,081.63 on the Project.

Prior to December 2011, VETS and LaSalle jointly negotiated with the U.S. government for payment and release of project funds remaining due them. However, the parties were unable to reach an agreement. VETS subsequently entered into a settlement agreement unilaterally with the USACE presumably to satisfy LaSalle and VETS obligations under the Project contract. Under this agreement, the Government waived liquidated damages, agreed to release approximately $600,000 in retained funds, and agreed to pay VETS an additional $3,000,000 over and above its original contract with VETS. LaSalle claims VETS entered into this settlement agreement without LaSalle's authorization, thus LaSalle rejected it. LaSalle now seeks to recover against VETS, and its surety the Hanover Insurance Company, for the amount LaSalle claims it is due on its Subcontract, with payment to be made from the funds derived from the VETS/USACE settlement agreement. Arguing

that VETS is in significant financial distress, LaSalle seeks a preliminary injunction prohibiting VETS from receiving, using, or transferring any funds from the settlement agreement entered into with the USACE on the Project (the "Settlement Funds"), and requiring the Settlement Funds to be immediately deposited in an escrow account to be held by this Court (Doc. 2).

Movants seek to join the present lawsuit for similar reasons, arguing that "included in what may be owed LaSalle on the project is a great deal of money owed by LaSalle to subcontractors, materialmen and equipment suppliers for labor, materials and equipment incorporated into the Double Dining Facility project" (Doc. 12). Movants state that "LaSalle is concerned that VETS may take the Settlement Fund moneys and abscond with them" and argue that they "have the same concern with respect to VETS and with respect to LaSalle" (Doc. 13). LaSalle, however, opposes the motion, denying it owes any money to Movants, arguing that Central breached its contract with them. Movants and LaSalle are currently litigating these claims in the United States District Court for the Eastern District of Michigan to determine LaSalle's liability under the Sub-subcontract with Central. *Central Electric/Westward Construction v. The LaSalle Group, Inc.*, Case No. 2:11-CV-10997.

**Standard**

Rule 24 of the Federal Rules of Civil Procedure provides that a party may intervene in an action permissively or as of right. The court must permit a party to intervene if it can show "(1) it has a recognized interest in the subject matter of the litigation; (2) the interest might be impaired by the disposition of the case; and (3) the interest will not be adequately protected by the existing parties." *South Dakota ex rel Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). In deciding whether to grant a motion to intervene as a matter of right, the court liberally construes

Rule 24 with "all doubts resolved in favor of the proposed intervenor." *Id.* The decision to allow permissive intervention, on the other hand is "wholly discretionary." *Id*. at 787. The principal consideration is whether the proposed intervention would "unduly delay or prejudice the adjudication of the parties' rights." *Id*. If the court grants a motion for permissive intervention, it may place "highly restrictive conditions" on the intervenor "because such a party has by definition neither a statutory right to intervene nor any interest at stake that the other parties will not adequately protect or that it could not adequately protect in another proceeding." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1 (1987).

## Discussion

### A. Movants do not meet the requirements for intervention "as of right" under Fed. R. Civ. P. 24(a).

Movants contend that they meet all of the requirements for intervention "as of right" under Rule 24(a) because they have an interest in the transaction that is the subject of the action, disposing of the action may impair their ability to protect this interest, and none of the existing parties adequately represent that interest. Plaintiff and Defendant disagree, and the Court concurs, finding that although Movants have a legally cognizable interest in the action that may be impaired by the disposition of the case, they have not shown that LaSalle cannot adequately protect this interest.

In order to intervene under Rule 24(a), a movant must first establish prongs one and two of the Rule 24(a) requirements, that it has a legally cognizable interest in the subject matter of the litigation, and that this interest will be impaired by the disposition of the case. The Eighth Circuit recognizes the existence of an interest under Rule 24(a)(2) only where it is "direct, substantial, and legally protectable." *United States v. Union Elec. Co*., 64 F.3d 1152, 1161 (8th Cir. 1995); *see also Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007). A mere

4

economic interest in the outcome of the litigation is not sufficient to warrant mandatory intervention. *Curry v. Regents of the Univ.,* 167 F.3d 420, 422-23 (8th Cir. 1999). However, an interest in a specific fund may be sufficient to entitle intervention in a case affecting that fund. *Mountain Top Condo. Ass'n v. Dave Stabbert Mater Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). Moreover, an interest that is "contingent upon the occurrence of a sequence of events before it becomes colorable" is not sufficient to satisfy the second prong of Rule 24(a). *Std. Heating & Air Conditioning Co. v. City of Minneapolis,* 137 F.3d 567, 571 (8th Cir. 1998) (quoting *Washington Elec. v. Mass. Mun. Wholesale Elec.,* 922 F.2d 92, 97 (2d Cir. 1990).

 LaSalle and VETS argue that Movants do not meet prongs one and two of the Rule 24(a) requirements because they have a mere economic interest, not a legally cognizable right in the settlement fund, and, relatedly, because they have not yet reduced their claims to judgment, they do not have a direct interest capable of being impaired. Movants contend that they possess a legally cognizable interest in the fund, that such interest is direct, and that absent intervention, they will have "no opportunity to stake [their] claim to that settlement fund, or any part of it" (Doc. 13). As support for this contention, Movants cite to case law holding that those who provide labor and materials to a construction project have a primary, direct, equitable right in the funds intended to pay for that work. *See Belknap Hardware & Mfg. Co. v. Ohio River Contract Co.*, 271 F. 144, 149 (6th Cir. 1921); *Martin v. Nat'l Surety Co.*, 85 F.2d 135, 139-40 (8th Cir. 1936).

 As to the first two prongs of the Rule 24(a) analysis, the Court finds that Movants have a legally cognizable interest in the settlement fund itself, and that such interest, even though contingent, could be impaired by disposition of the case. Although LaSalle and VETS argue that Movants' interest is merely economic in nature, Movants are asserting a right to monies from the

5

particular fund at issue in the litigation. *See* Wright & Miller, Fed. Prac. & Proc., § 1908.1. In addition, although such right is still contingent pending disposition of the Michigan litigation, it is direct and cognizable. "Although an intervenor cannot rely on an interest that is wholly remote and speculative, the intervention may be based on an interest that is contingent upon the outcome of the litigation." *Id.* at 1162.

As to the third prong of Rule 24(a), Movants must establish that their interest is not adequately represented by the existing parties to the litigation. *Chiglo v. City of Preston*, 104 F.3d 185, 187 (8th Cir. 1997); *see also Union Elec. Co.,* 64 F.3d at 1168. "The intervenor bears the burden of showing that his interests are not adequately represented by existing parties." *Id.* at 187. This burden is minimal, and may be met by showing that representation "may be inadequate." *Kansas Pub. Emp. Ret. Sys. V. Reimer & Koger Assoc. Inc*., 60 F.3d 1304, 1308 (8th Cir. 1995) (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10).

Movants argue that LaSalle will not adequately represent its interest in the pending litigation because LaSalle is their "principal adversary in all of the pending litigation" and has done "everything possible to avoid and evade their payment obligations" to Movants. Movants also contend that LaSalle's initiation of the lawsuit in this Court, as opposed to bringing it in as a cross-claim in the Michigan litigation is intended "to hide the VETS-LaSalle dispute" and "avoid payment [to the subscontractors] out of the settlement fund monies earned" (Doc. 41). LaSalle and VETS, however, argue that LaSalle's interest vis-à-vis VETS is identical to Movants interest: both parties seek for LaSalle to obtain the highest possible recovery for the work performed by LaSalle's forty subcontractors and suppliers on the Fort Leonard Wood project.

With regard to the third prong of the Rule 24(a) analysis, Movants have not sustained their

6

burden of showing that the current parties to the lawsuit cannot adequately protect their interest. Although Movants assert generalized statements including that LaSalle is their "principal adversary in the pending litigation," and that LaSalle is attempting to "avoid payment to them," Movants fail to provide any specific evidence to meet even the minimal burden of showing how LaSalle's interest in obtaining money from VETS is any different than Movants' interest in LaSalle obtaining money from VETS.

The fact that LaSalle disputes Movants' entitlement to any recovery from the Settlement Funds does not mitigate against LaSalle's adequate representation of all the subcontractors' interests in obtaining the greatest possible recovery. And, the Court cannot conceive of an instance where LaSalle would seek lessor payment from VETS merely to avoid payment to Movants. While it is conceivable that Movants may experience difficulty obtaining payment from LaSalle if LaSalle recovers from VETS, that is not the purpose of this litigation. The purpose of this litigation is to determine LaSalle's rights with regard to the Settlement Funds held by VETS; it is not to determine Movants' entitlement to money it claims it is owed from LaSalle. In fact, the case to determine Movants' rights vis-à-vis LaSalle is currently before the United States District Court for the Eastern District of Michigan. Thus, LaSalle will adequately represent the interests of Movants and the other subcontractors who have claims against LaSalle and VETS for work performed on the Fort Leonard Wood Project. LaSalle's interest in this lawsuit is to maximize its recovery from VETS. How such recovery will be split between LaSalle and the various subcontractors is properly the subject of the Michigan lawsuit.

**B. The Court declines to grant Movants permissive intervention under Fed. R. Civ. P. 24(b).**

Movants also seek to intervene under Rule 24(b) which provides for permissive intervention

7

when the party has a "claim or defense that shares with the main action a common question of law and fact." Movants only arguments for permissive intervention are that the original dispute between LaSalle and VETS "shares common questions of both fact and law with [Movants'] proposed claims" and that intervention at this early stage of litigation will not cause delay or undue prejudice.

Despite the existence of common questions of law or fact, the Court has complete discretion whether to grant or deny a motion for permissive intervention. *S. Dakota ex rel Barnett v. United States Dept. of Interior*, 317 F.3d 783, 787 (8th Cir. 2003) (citing *Bush v. Viterna,* 740 F.2d 350, 359 (5th Cir. 1984) ("Permissive intervention is wholly discretionary with the district court even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied."). In making its decision, the Court's principal consideration is "whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *S. Dakota ex rel Barnett,* 317 F.3d at 787 (citing *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 73 (2d Cir.1994).

In the instant case, the Court finds that allowing intervention would unduly prejudice the adjudication of both Plaintiff's and Defendant's rights, and would delay the current action by adding time, complexity, and unnecessary claims and motions. As the District Court of Massachusetts has noted:

> It is easy enough to see what are the arguments against intervention where, as here, the intervenor merely underlines issues of law already raised by the primary parties. Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.

8

*Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc.,* 51 F. Supp. 972, 973 (D. Mass.1943). Here, LaSalle seeks to determine which portion of the Settlement Funds VETS owes to it. Adding Movants to the lawsuit would open the door to intervention by all other subcontractors on the Fort Leonard Wood Project. Because none of these other subcontractors, including Movants, have a judgment against LaSalle or VETS at this time, it would needlessly add delay, additional duplicative discovery, and undue prejudice to LaSalle and VETS. Accordingly, the Court denies Movants permissive intervention under Rule 24(b).

## Conclusion

For the foregoing reasons, the Court finds that Movants are not entitled to intervention under either Rule 24(a) or Rule 24(b). Accordingly, Movants' motion to intervene (Doc. 12) is DENIED.

**IT IS SO ORDERED.**

      /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT

Dated: April 2, 2012

9

Case 6:11-cv-03517-DGK   Document 51   Filed 04/02/12   Page 9 of 9