**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| THE LASALLE GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-03517-CV-S-DGK |
| ) | |
| VETERANS ENTERPRISE TECHNOLOGY ) | |
| SERVICES, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING MOTION TO DISMISS

This case arises from a construction project for the United States, through the United States Army Corps of Engineers ("USACE"), under which the USACE engaged Defendant Veterans Enterprise Technology Services LLC ("VETS") as the primary contract to perform the construction of a dining hall at Fort Leonard Wood, Missouri. At issue is a fund of money derived from the settlement of certain construction contract claims originating with USACE in which the Plaintiff, the LaSalle Group, Inc ("LaSalle"), and the Defendant, VETS, each claim to have an interest.

Currently pending before the Court are Defendant VETS' "Motion to Dismiss, or in the Alternative, Stay Case Pending Arbitration" (Doc. 37) and "Suggestions in Support" (Doc. 38); Defendant The Hanover Insurance Company's ("Hanover") "Motion to Dismiss Plaintiff's Complaint, or in the Alternative, to Stay Action Pending Outcome of Arbitration" (Doc. 39) and Suggestions in Support (Doc. 40); and Plaintiff LaSalle's responses to these motions (Docs. 45-48). Because the Court finds that LaSalle's claims against VETS are subject to binding arbitration, the Court dismisses LaSalle's claims as to VETS and stays the case as to Hanover pending the outcome of arbitration.

**Background**

On July 30, 2008, the USACE awarded VETS a contract for construction of a "Double Dining Facility" ("the Project") at Fort Leonard Wood, Missouri, in the original contract amount of $19,100,000 ("the Prime Contract"). As required by the Prime Contract and the Miller Act, 40 U.S.C. § 3133(b)(2), VETS obtained a payment bond from The Hanover Insurance Company ("Hanover") in the amount of $19,100,000 ("the Hanover Bond"). On or about August 25, 2008, VETS and LaSalle entered into a subcontract for $15,566,000 ("the Subcontract") under which LaSalle was to engage necessary trade subcontractors, materials and equipment suppliers, and laborers as necessary to complete work on the Project. The Subcontract incorporated the terms and conditions of the Prime Contract by reference.

During the course of their work on the Project, VETS and LaSalle incurred extra costs due to work and delays caused by the USACE. Because LaSalle was not in privity of contract with USACE, LaSalle needed VETS to sponsor its claim against them.[1] In order to do this, VETs and LaSalle entered into a liquidation agreement on December 15, 2010 ("the Liquidation Agreement") relating to the Fort Leonard Wood Project and two additional projects between the parties. One purpose of the Liquidation Agreement was to prevent LaSalle and VETS from bringing claims against one another which might harm their collective position relative to USACE. As such, they agreed "cooperate with each other to complete the Projects and to prosecute all Claims made to [USACE]." Furthermore, in Section 2 of the Liquidation Agreement, the parties agreed to a mutual waiver and release of claims against the other, stating:

---

[1] Under *Severin v. United States,* 99 Ct.Cl. 435 (Ct. Cl. 1943), a subcontractor may only pursue monetary claims against the Federal Government if (a) such claims are sponsored and passed-through by the prime contractor, and (b) the prime contractor remains liable to its subcontractor. The Federal Circuit has upheld the so-called "liquidation agreement" between prime contractor and subcontractor that limits the prime contractor's liability to its subcontractor and state that the prime contractor's liability to its subcontractor is conditioned upon the prime contractor receiving payment from the Government. *See, e.g.*, *W.G. Yates & Sons Constr. Co. v. Caldera*, 192 F.3d

2

> The Parties hereby waive any and all claims against each other and mutually release each other from any and all liability, except for claims related to any monies owed by [USACE] pursuant to its base contract with VETS, which is held by [USACE] as liquidated damages.

The parties further agreed that as the parties recovered funds from USACE, they would divide those funds, with LaSalle receiving 69% and VETS receiving 31% of the net recovery up to $4.3 million. If the net recovery on the claims were to exceed $4.3 million, the percentages would change, with VETS receiving 65% and LaSalle receiving 35%. The Liquidation Agreement also provided that VETS would have the right to assist LaSalle in its negotiations with its subcontractors (Section 5), that VETS' obligation to pay LaSalle was subject to the condition that VETS would not pay LaSalle until it was paid by USACE (Section 7), and that the parties would consent in writing to any settlement (Section 4).

LaSalle certified its costs on the Project to VETS, and VETS passed through LaSalle's portion of the claims to the USACE in an administrative process that began with the submission of a Request for Equitable Adjustment ("REA") and later became a certified claim for $3,580,472 ("the Initial Claim") under the Contract Disputes Act, 41 U.S.C. § 7101, *et seq*. Following VETS submission of the Initial Claim, VETS and LaSalle jointly negotiated with the U.S. government for payment and release of the Project funds remaining due them. However, the parties were unable to reach an agreement. VETS subsequently entered into a settlement agreement unilaterally with the USACE, presumably to satisfy LaSalle and VETS obligations under the Project contract. Under this agreement, the Government waived liquidated damages, agreed to release approximately $600,000 in retained funds, and agreed to pay VETS an additional $3,000,000 over and above its current contract with VETS. LaSalle claims VETS entered into this settlement agreement without LaSalle's

---

987,991 (Fed. Cir. 1999).

authorization, and LaSalle rejected it.

LaSalle now brings suit against VETS, and its surety the Hanover Insurance Company, for breach of contract and payment of bond liability under the Miller Act, seeking to recover the $6,336,285.82 LaSalle claims it is due on its contract, with payment to be made from the funds derived from VETS settlement agreement with the USACE. LaSalle also seeks interest on its amount claimed. Arguing that VETS is in significant financial distress, LaSalle moves for a preliminary injunction prohibiting VETS from receiving, using, or transferring any funds from the settlement agreement entered into with the USACE on the Project in settlement of the Claims submitted by VETS and LaSalle to the USACE (the "Settlement Funds"), and requiring the settlement funds to be immediately deposited in an escrow account to be held by this Court (Doc. 2).

**Standard**

Defendants seek to dismiss LaSalle's action against VETS and Hanover pursuant to Federal Rules of Civil Procedure 12(b)(1) lack of subject matter jurisdiction, 12(b)(3) improper venue, and 12(b)(6) failure to state a claim upon which relief can be granted. In the alternative, Defendants seek to dismiss all counts against VETS and to stay the action against Hanover as to the Miller Act Surety.

The plaintiff has the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the district court may consider matters outside the pleadings. *Osborn v. United States,* 918 F.2d 724, 728 n.4 (8th Cir.1990). In evaluating a motion to dismiss for improper venue pursuant to Rule 12(b)(3), the court should not evaluate what venue would be best for the litigants, but rather whether venue in that court is proper. *Intercoast*

4

*Capital v. Wailuku River Hydroelectric Ltd. P'ship*, No. 4:04-CV-40304, 2005 WL 290011 at *3 (S.D. Iowa Jan. 19, 2005). On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court must dismiss a complaint when it fails to state a claim upon which relief can be granted. *Bishop v. Abbott*, No. 07-4218-CV-C-NKL, 2008 WL 3200784, at *2 (W.D. Mo. Aug. 6, 2008). In ruling on a motion to dismiss, the factual allegations in the complaint are accepted as true, and the court must determine whether they show the pleader is entitled to relief. The complaint is construed liberally in the light most favorable to the plaintiff. *Id.* (citing *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008)).

**Discussion**

Defendants first argue that this Court should dismiss LaSalle's claims against VETS because the Subcontract between LaSalle and VETS contains a valid and binding arbitration provision, giving an American Arbitration Association ("AAA") arbitrator exclusive and complete jurisdiction over LaSalle's claims. Plaintiff contends that Defendants' arbitration demand is premature because mediation is a necessary precondition to arbitration and that the parties have yet to engage in mediation. Plaintiff also maintains that while LaSalle's claim for money owed on the Subcontract may be subject to arbitration if the parties are unsuccessful in mediation, LaSalle's claims for monies owed from the Settlement Fund are not subject to arbitration because they are governed not by the Subcontract but by the Liquidation Agreement.

First, the Court must establish whether the contract between the parties contains a valid arbitration provision. Next, the Court must determine if the controversy at issue is subject to this provision. If it is, the Court must dismiss the action. The Eighth Circuit has held that in cases where the FAA applies, and where the claims at issue are subject to a valid and enforceable arbitration

5

clause, dismissal is appropriate. *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536 (8th Cir. 2002); *Barker v. Golf U.S.A., Inc*., 154 F.3d 788, 793 (8th Cir. 1998); *Moore v. Nieman Marcus Group*, No. 2009 WL 4544740, at *1 (E.D. Mo. 2009) ("Where a claim, on its face, is subject to arbitration, a court lacks jurisdiction to decide the claim on its merits.").

Here, the parties do not contest that the FAA applies or that the Subcontract contains a valid arbitration clause. In the Subcontract, the parties agreed to arbitrate all "Claims" in lieu of litigating them in federal or state court. Specifically, Article 6.2 of the Subcontract provides:

> For any Claim subject to, but not resolved by, mediation pursuant to Section 15.3 of the AIA Document A201-2007, the method of binding dispute resolution shall be as follows:
>
> [x]   Arbitration pursuant to Section 15.4 of AIA Document A201-2007
>
> [ ] Litigation in a court of competent jurisdiction
>
> [ ] Other (Specify)

The contract also provides that all claims will be administered by the American Arbitration Association pursuant to its Construction Industry Arbitration Rules ("CIAR"). Section 15.4 of the AIA A201-2007 "General Conditions" provides, in relevant part, that:

> If the parties have selected arbitration as the method for binding dispute resolution in the Agreement, any Claim subject to, but not resolved by, mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association with its Construction Industry Arbitration Rules in effect on the date of the Agreement.

Furthermore, the CIAR provide, in Rule 9, that the arbitrator "shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." CIAR Rule 36 also gives the arbitrator the authority to "take whatever

6

interim measures he or she deems necessary, including injunctive relief and measures for the protection or conservation of property and disposition of perishable goods."

Thus, the parties do not dispute and the Court concurs that the Subcontract between VETS and LaSalle contains a valid and enforceable arbitration agreement. The parties disagree, however, as to whether Plaintiff's claims to recover money owed from the Subcontract are subject to this agreement. Plaintiff maintains that they are not because the claims have not yet proceeded to mediation. According to the terms of the contract, claims are subject to arbitration only if they are not resolved by mediation. Plaintiff contends that because none of the claims have proceeded to mediation, and because VETS has not responded to Plaintiff's proposals to engage third-party neutral mediators, VETS demand for arbitration is premature.

The Court, however, is not in a position to determine whether VETS' demand for arbitration is premature. As specified in the arbitration agreement, the arbitrator, not the Court, has exclusive jurisdiction to determine issues concerning the arbitration agreement's validity and applicability. While generally questions concerning the validity and scope of an arbitration provision are questions for courts to decide, *see Fallo v. High-Tech Inst.,* 559 F.3d 874, 877 (8th Cir. 2009) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)), the opposite is true where the parties "clearly and unmistakably" have referred those questions to an arbitrator. *Id.* Therefore, even though Defendants' request for arbitration may be premature, because of the parties' arbitration agreement, the arbitrator, not the Court, must decide whether arbitration is now appropriate. Accordingly, the Court dismisses LaSalle's claims on the Subcontract.

The parties also dispute whether Plaintiff's claims to monies from the Settlement Fund are subject to the arbitration agreement. Plaintiff argues that because such claims are not based on the

7

Subcontract itself, the arbitration provision does not apply. Specifically, Plaintiff argues that LaSalle's claims against VETS for money recovered from the Settlement Fund are not subject to the arbitration provision of the Subcontract, but instead are subject to the Liquidation Agreement which does not contain an arbitration provision. The Court finds this argument unpersuasive. There is no evidence in the Liquidation Agreement that it was intended to supersede, rather than supplement, the Subcontract. In fact, the language of the Liquidation Agreement states that the agreement "shall be governed by the applicable laws as set forth in the Contract between the Parties." Thus, the fact that the Liquidation Agreement does not contain an arbitration provision is not determinative.

Additionally, the arbitration provision in the Subcontract is broad, conveying an intent to include all disputes between the parties regarding work performed on the Project within the scope of the agreement. "[T]he very existence of an arbitration clause creates a 'presumption of arbitrability' that should be controlling unless there is 'positive assurance' that the contract cannot be interpreted to include the particular dispute at issue. *Guiterrez v. State Line Nissan*, No. 08-0285-CV-W-FJG, 2008 WL 3155896, at *1 (W.D. Mo. Aug. 4, 2008) (citing *Daniel Const. Co. v. Local 257, IBEW,* 856 F.2d 1174, 1181 (8th Cir. 1988)). Here, Section 6.2 of the Subcontract's arbitration provision provides for arbitration of: "a demand or assertion by one of the parties seeking, as a matter of right, payment of money, or other relief with respect to the terms of the Contract." It also subjects to arbitration any "disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." LaSalle's claims for money owed from the Settlement Fund are certainly "disputes" between the two parties "relating to" the Subcontract. Therefore, these claims are also subject to the Subcontract's arbitration provision. Accordingly, like Plaintiff's claims for money owed on the Subcontract, the arbitrability of Plaintiff's claim to monies from the Settlement Fund is

8

for the arbitrator, not the Court to decide.

Finally, with regard to LaSalle's claims against Hanover, the Court holds that those claims must be stayed pending arbitration of LaSalle's claims against VETS. LaSalle's claims against Hanover under the Hanover Bond are dependent upon LaSalle's ability to establish liability on the part of Hanover's principal, VETS, because Hanover's liability is conditioned upon VETS' failure to pay. Thus, LaSalle's claims against Hanover are dependent on resolution of the underlying dispute between LaSalle and VETS. Therefore, LaSalle's claims against Hanover are stayed pending the outcome of arbitration.

## Conclusion

The parties' Subcontract requires arbitration as the exclusive forum for disputes arising out of and relating to the Subcontract. Accordingly, the Court dismisses all of LaSalle's claims against VETS and stays LaSalle's claims against Hanover, pending the outcome of arbitration between VETS and LaSalle. LaSalle shall file a status report on or before August 2, 2012, regarding the status of arbitration between LaSalle and VETS, and every ninety (90) days thereafter.

**IT IS SO ORDERED.**

Date:   April 2, 2012                                              /s/ Greg Kays

                                                                                GREG KAYS, JUDGE
                                                                                UNITED STATES DISTRICT COURT